The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
All documents previously admitted into evidence during the hearing before the Deputy Commissioner in this matter on June 9, 1999 are a part of the evidentiary record, with the exception of the following, which were thereafter stricken from the record:
 a. Plaintiff's Exhibit #3: Letter from Alma Jones to Norman Pettit dated August 13, 1998;
b. Plaintiff's Exhibit #3A Certified Mail Receipt
 c. Plaintiff's Exhibit #4 Statement from Ms. Reba Jones dated May 30, 1999.
 ***********
Based upon the evidentiary record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On June 19, 1998, plaintiff was a 35-year old female employed by defendant as a car wash detailer. Defendant operates a car wash detailing business, where plaintiff's duties included washing and vacuuming automobiles.
2. Plaintiff contends that at the time of the incident defendant employed not only plaintiff but also Belinda Oxendine and an individual who plaintiff identified as an African-American man named "Darryl".
3. Plaintiff worked approximately forty (40) hours week at the rate of $160.00 to $180.00 per week.
4. On June 19, 1998, plaintiff was cleaning a truck with Carol Pettit, co-owner and Norman Pettit's wife, when she slipped off the back of the vehicle, injuring her right foot. Carol Pettit acknowledged that she heard a popping sound when plaintiff fell. Plaintiff passed out when she fell; however, once regaining consciousness, she informed Norman Pettit that she had injured her foot. He advised plaintiff to go home and rest.
5. Plaintiff sought medical treatment on June 20, 1998 at Southeastern Regional Memorial Hospital Emergency Room. X-rays revealed a stress fracture of plaintiff's right foot at the fifth (5th) metatarsal. Thereafter, plaintiff sought treatment from Dr. Stan Dajczak at Robeson Orthopedic Center where plaintiff received an emergency splint and was ordered to remain off her foot for at least six (6) weeks.
6. Plaintiff again saw Dr. Dajczak on July 28, 1998. At that time plaintiff fracture was not healing. Plaintiff was ordered to remain off her foot for at least another four (4) weeks.
7. However, plaintiff did not return to Dr. Dajczak as scheduled but plaintiff did seek treatment at a hospital in Orlando, Florida on September 28, 1998, the expense of which was paid by Medicaid. Plaintiff's symptoms continued to improve and she did not seek additional medical treatment.
8. In March of 1999, plaintiff returned to work at Reba's Café, working thirty to forty hours per week.
9. Norman Pettit testified at the hearing that at no time in the seven-year history of his business has he employed three or more employees. As a result, he has never carried workers' compensation insurance. His wife, Carol Pettit, was co-owner of the business and not an employee. Mrs. Pettit was not paid a salary, but received a "draw" instead. Mrs. Pettit also had equal decision-making authority for the business. Mr. Pettit acknowledged his awareness of the incident resulting in the injury to plaintiff's foot. Mr. Pettit instructed plaintiff to return to the jobsite on Monday, to complete paperwork in order to file a claim on his general liability insurance policy. However, plaintiff did not comply with his request.
10. Carol Pettit testified at the hearing that, at the time of the incident in question, the business only employed two persons: plaintiff and Belinda Oxendine. Mrs. Pettit did not recall any African-American males who worked for the company during this time. She corroborated Mr. Pettit's testimony that the company had never had three or more employees, nor had they ever carried workers' compensation insurance. She also confirmed that neither she nor Mr. Pettit receive a paycheck from the business.
11. Greater weight is give to the testimony of Mr. and Mrs. Pettit with respect to the number of employees regularly employed by defendant. Accordingly, defendant did not regularly employ three or more employees at the time of plaintiff's injury.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 19, 1998 defendant did not employ three (3) or more regular employees and therefore was not subject to and bound by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1).
2. Having three (3) or more regular employees is a jurisdictional prerequisite. Consequently, since this prerequisite is not met in the instant case, defendant is not subject to the jurisdiction of the Commission. N.C. Gen. Stat. § 97-2.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim in this matter must be, and the same is hereby DISMISSED WITH PREJUDICE for lack of jurisdiction.
2. Each side shall pay its own costs.
This the ___ day of September 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER